THALMAN *vs.* CANON and others.

| 24 | 127 |
| 56 | 887 |

1. By an agreement under seal, B. was to convey to C. certain real estate, and C. was to pay certain debts of B.'s son; among others, one to T. The conveyance, as at first proposed, was to have been made to C. and T., but by mutual consent, it was made to C. alone, the latter to pay T.'s debt. On the day the deed was to be delivered, T. gave to C. a written receipt for the amount of his debt, as agreed upon. C. was not ready to pay, but took the receipt. He then drew up a new agreement, the same as the first, but making no provision for the payment of T.'s debt, and falsely representing to B. that T. had refused to comply with the terms of the agreement, persuaded him to execute the new agreement, and give him a deed in pursuance of it, C. giving to B. his own note for the amount of T.'s debt, payable in two years. C. then refused to pay or recognize T.'s claim, alleging that he had declined to accept the amount agreed upon, and that the property had been conveyed to him on a different bargain. Upon bill filed by T. against C. and B. and son, praying an account against C. as trustee, and payment by him of T.'s claim, and that it be made a lien on the land, with a general prayer for relief—*Held*,

1. The conveyance to C. must be considered as having been made in pursuance of the original agreement, which, so far as he and T. are concerned, was never revoked. C. must account as trustee to T. for the amount of his debt, with interest from the day the deed was received, with costs.

2. The complainant's claim cannot be made a lien on the land. The facts do not constitute a case of resulting trust. The intention was to create a personal obligation from C. to T.

3. No decree can be had against either B. or his son. There is nothing which either can be decreed to perform. But the circumstances disentitle them to costs.

2. A trust voluntarily assumed, is none the less binding and complete, because the trustee acts without promise or expectation of compensation for his services.

3. A person acting as agent for another, cannot use the power conferred by his position to make an advantage for himself out of or in the course of his principal's business.

4. The doctrine of resulting trusts applies only where the trustee pays for the land, or some aliquot part of it, with the money of the *cestui que trust*. Where a trustee has taken title to lands, and, as part of the consideration therefor, has undertaken to pay certain debts of the grantor, no trust results to a creditor whose debt the trustee refuses to pay, by virtue of a receipted bill, given by the creditor to the trustee, which he might have used as money, but did not.

This cause was argued before the Vice-Chancellor, upon the pleadings and proofs taken before him.

*Mr. W. S. Whitehead,* for complainant.

*Mr. D. A. Ryerson,* for defendants.

THE VICE-CHANCELLOR.

The object of this suit is to enforce the fulfillment of a trust. In August, 1871, James S. Blanchard, one of the defendants, was indebted to several parties respectively, in sums amounting in all to about $2000. Of this amount, the sum of $888 was due to the complainant, Thalman, and $565 to William S. Canon, one of the defendants. Isaac Blanchard, the debtor's father, being willing to provide for the debts of his son, who was a minor at the time they were contracted, entered into an agreement, under seal, with Canon, for the sale and conveyance to Canon of real estate in Newark, for the price of $5000. The agreement was dated the 23d day of August, 1871, and called for the delivery of the deed on the first of the following month, at the office of Canon, who was then to make up the price, by assuming a mortgage on the premises, by delivering to Blanchard receipted bills for the debts owing by his son, which bills the agreement particularly specified, and by paying the balance, partly in cash and partly by a note at four months. This agreement was brought about by the knowledge and co-operation of Thalman. He relied on it as the means of getting his money, the arrangement being that Canon should pay the creditors of the son their bills, and have the amount of them allowed by the father, on delivery of the deed. On the first of September, when the deed was to pass, Thalman, upon notice from Canon, attended at his office, and met there the younger Blanchard, between whom and himself a debate occurred, whether interest should be allowed on the $888 named in the agreement as the principal amount of his debt. The son said his father would pay the principal alone, with-

out interest. Thalman then waived the interest, and thereupon signed a receipt in full, drawn up by the son, and which was handed to Canon to deliver to the father, as the agreement required. Canon was not ready then to give Thalman his money, but said something about examining the deed, and that he would see him that night. When Thalman and Blanchard had gone, Canon immediately proceeded to draw up a new agreement, substantially the same as the existing one, with the exception of leaving out Thalman's name, and all provision for the payment of his debt. This new agreement he took, about two o'clock of that day, to Blanchard the elder, who was engaged at his work, and ignorant of what had occurred. Canon told him, in substance, that Thalman would not come to terms, would not comply with the agreement, and pressed Blanchard to close the business with him at once, by signing the new agreement, and delivering the deed, in pursuance of it. He did so, tore up the first agreement, and Canon took the deed. When afterwards called on by Thalman, he refused to pay or recognize his claim, alleging that he had declined to accept the $888, without interest, and that the property had been conveyed to himself, on a new and different bargain.

Thalman's bill is now filed against Canon and the two Blanchards, and prays that the first may be held to account as trustee; that he be decreed to pay the complainant his claim; and that it be made a lien on the land; together with a general prayer for relief.

An answer was filed by Canon, and a separate one by the Blanchards. The main insistment of each answer is, that Thalman would not comply with the agreement, and is, consequently, entitled to nothing under it. This insistment is conclusively disproved by the evidence. The parties have been examined as witnesses, and from their testimony, in connection with the other proofs, it is evident that Thalman did, in fact, distinctly surrender the interest, and left with Canon a receipt in due form, with authority to deliver it to Blanchard, on receipt of the deed. His motive in not doing

so sufficiently appears. By delivering it, he would have been bound, as he knew, to pay Thalman the $888 in cash. Instead of so doing, he made a new bargain with Blanchard, more advantageous to himself, by substituting his own note for that sum, payable, without interest, at the end of two years. He accomplished this by making Blanchard believe what, in fact, was untrue, and what, if true, would have justified, in respect to Thalman, the rescission of the agreement. Whether the agreement was so far of an executory and voluntary character that Blanchard was free to revoke or to change it, as against the creditors of the son, was a question discussed upon the argument, but does not seem to me a material question, in this case, to decide. The complainant looked to Canon for his money, not to Blanchard. All that the latter could be called on to do, was to convey the premises to the former, who was to take them, and account to the complainant for the amount of his debt. This conveyance was made, and the obligations of Canon, which result from it, cannot be changed by his own wrongful act, in passing over his note instead of the receipt.

So far as I can discover, there is nothing which the Blanchards, or either of them, can be decreed to perform. The suggestion, that the father, by virtue of a prior conveyance from the son, had become bound for the payment to the complainant of his debt, is unsustained, I think, by the proofs, and no fraud or bad faith on his part being shown, in delivering the deed, no relief as against him can be given. By the agreement itself, as well as outside of it, he knew Canon, in this business, as Thalman's representative and agent, and was justified in assuming the statement, that Thalman would not come to terms, to be true. That it was not true, must, however, have been known to the son, who was present when the substituted agreement was signed; and in regard to him, if not to the father, the evidence may well warrant the belief that the design was to make Thalman settle for a much smaller sum. This being so, and the important averment of their answer being refuted by the evi-

Thalman *v.* Canon.

dence, these defendants, though exempted from an adverse decree, will not be entitled to costs.

Against Canon, personally, the case is a different one. He was applied to, by Thalman, for assistance in collecting his debt, and agreed to assist by taking the land at the stipulated price. He and Thalman were both creditors of the son. Their claims were of little value because the debtor had lost his property, and because, also, he set up infancy as a defence. By their joint negotiations with the father, he consented to convey the lands in such way as to have the debts paid. As at first proposed, the conveyance was to have been made to Thalman and Canon, together, but by mutual consent it was made to Canon, alone. He was entrusted with Thalman's interests, and undertook to protect them. No compensation for his services appears to have been promised or expected, but the fiduciary relations he assumed, were none the less binding and complete. Thalman had forborne to take the title himself, and allowed it to be vested solely in Canon. The latter became Thalman's trustee, and as such, was prohibited from effecting, without his knowledge and consent, any change in the bargain, to benefit himself at Thalman's expense. His conduct, in making use of his confidential position, to oust his principal from benefits which, as his trusted agent, he was relied on to secure, was a palpable violation of his trust, for which equity will hold him to account. A person acting as agent for another, cannot use the power conferred by his position, to make an advantage for himself out of, or in the course of his principal's business. No principle is more elementary or better settled than this. So far as he and Thalman are concerned, the original agreement was never actually revoked. It must be considered as having been performed, and the conveyance as made in pursuance of it. He must therefore be decreed to pay to the complainant the $888, with interest from September 1st, 1871, when the deed was received, together with his costs of the suit.

I do not see how the complainant can also follow the land.

Where one buys land with the money of another, the buyer takes the land in trust for him who advances the money. The trust arises, not by agreement, but by implication of law. It is expressly exempted from the operation of the statute of frauds, and may consequently be established by parol. The theory is that the money has been transmuted into land, the real owner in each case continuing the same. If the agent has wrongfully put the principal's money into land, he holds it in trust for the principal, who may claim it if he chooses, or he may look to his agent to refund him the money. But he cannot be the owner of both, and must elect which he will take. This doctrine of resulting trusts was clearly unfolded in Dyer *v.* Dyer, cited as the leading case upon that subject, and extensively illustrated by English and American notes, in *White's Leading Cases in Equity, Vol. I, p.* 165. It is there shown, by an array of decisions, that if the trustee or agent lay out the money which he holds in his fiduciary character, in the purchase of land, and take the conveyance to himself, the person entitled to the money may, at his election, charge the trustee, personally, or follow the money into the land, and claim the purchase as made in trust for himself. In the present suit, I should advise a decree giving the complainant this option, if I could feel justified in holding that the doctrine of resulting trusts was applicable to the facts of this case. But I am unable to see how it can be. Canon did not pay for the land, or any aliquot part of it, with Thalman's money. By the terms of the bargain, it seems to have been expected that he would first settle with Thalman and the other creditors of the son, and afterwards pass over to the father the receipted bills, at the delivery of the deed. This was the arrangement. It was not intended that Thalman should have any interest in the land, or that he should advance any money. He was to look to Canon, and receive money instead of advancing it. He chose to entrust Canon with the receipted bill, without getting the money, on the faith that the agent would employ it, and become bound to him, instead of to the father. The

intention was to create a personal obligation from Canon to himself. This was done, and the ground on which the decree must stand, is that of a violated personal confidence and trust, by which the complainant lost the advantages he should have secured, had his agent been faithful to his principal. The doctrine of resulting trusts has been said to be, probably, one of the mistakes of equity. Whether this observation be or be not a just one, it is clear that it can stand only on the clearly established fact of actual payment of the price, or a definite part of it. It would be a misapplication of the doctrine, it seems to me, in this case, to construe the mere possession of a receipted bill in the hands of the agent, which he might have used as money, but did not, as a substantial payment by Thalman. I should be glad to render the complainant's remedy, in this instance, as efficacious as possible, but it cannot be extended on untenable grounds.

The force and effect which the recent statute imparts to decrees for the payment of money, is the only source of a lien on the land which can, in my judgment, be available for the complainant's relief.

I respectfully advise as above.